Emanuel Schwartz v. Commissioner.
Schwartz v. Commissioner
Docket No. 12507.
United States Tax Court
1949 Tax Ct. Memo LEXIS 254; 8 T.C.M. (CCH) 226; T.C.M. (RIA) 49055; February 28, 1949
Daniel A. Taylor, Esq., Joseph B. Crowley, Esq., 105 W. Adams St., Chicago, Ill., and James R. Bansley, C.P.A., 128 N. Wells St., Chicago, Ill., for the petitioner. Jackson L. Boughner, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves a deficiency of $26,175.42 in income tax for the year 1943. The issue is whether the respondent erred in determining that ordinary income of $47,625, instead of capital gain, was received by petitioner in a certain settlement agreement. The facts set forth in a stipulation are found as *255 therein agreed upon. Portions thereof, which we consider necessary for proper consideration of the issue, will be included in our findings in connection with findings made from other evidence. By an amended answer respondent claims an increased deficiency of $27,243.96. Findings of Fact The petitioner, an individual with his principal office in Waukegan, Illinois, filed his income tax returns for the years 1942 and 1943 with the collector for the first district of Illinois. From February 4, 1928, to June 9, 1934, Moses H. Rosenblum, hereinafter sometimes referred to as Rosenblum, who died at some undisclosed time prior to the hearing, owned the fee simple title to a parcel of real estate in Waukegan, Illinois, improved by a building known as the Neisner Building. The property will be herinafter referred to as the Neisner property. On April 30, 1931, the property was under lease from Rosenblum and his wife, Rose Rosenblum, to Neisner Bros., Inc., a New York corporation, for a term of 25 years from February 4, 1928, at an annual rental of $24,000, with an obligation on the lessee to pay the taxes on the property and keep the building insured and repaired at its expense. The lessee *256 conducted a mercantile business in the premises. On April 30, 1931, the lessors, with the written consent of the lessee, assigned all of their right, title and interest in the lease to the petitioner as security for the payment of a note originally in the amount of $50,000, secured by a second mortgage on the Neisner property, which mortgage petitioner had acquired by assignment from Neisner Bros., Inc. The assignment was recorded and provided that the lease was assigned as collateral security for the payment of the note and mortgage; that upon payment of the mortgage note the assignment shall become null and void; and that the lessors were to retain possession of the premises unless default was made in the payment of the note or interest thereon, or the assignors failed to comply with the terms of the mortgage. On July 22, 1931, the lessors executed another assignment of the lease, which was not assented to by the lessee or recorded, hereinafter sometimes referred to as the "Supplemental Agreement," as security for certain notes aggregating the amount of $34,330, the details of which are listed, infra, and a check dated May 16, 1931, for $250, a total of $34,580. The list is: *257 Date
Face Amount
Maturity Date
Makers
10/31/30
$ 1,000.00
1/31/31
Moses H. Rosenblum
Rose Rosenblum
Edward Rosenblum [1]
10/15/30
2,420.00
30 days after date
Edward Rosenblum
3/24/31
1,210.00
30 days after date
Edward Rosenblum
3/24/31
1,000.00
Edward Rosenblum
3/24/31
200.00
30 days after date
Edward Rosenblum
8/26/30
22,000.00
One year after date
Moses Harry Rosenblum
Rose Rosenblum
9/8/28
3,000.00
Rose Rosenblum
(3 Notes)
10/15/30
3,500.00
Two years after date
Moses Harry Rosenblum
Rose Rosenblum
$34,330.00
Edward Rosenblum The instrument dated July 22, 1931, provided that the assignment of April 30, 1931, should also serve as collateral security for the payment of the notes and interest, and commissions thereon, whether repurchased or guaranteed by petitioner, and gave petitioner authority to use his discretion regarding the time and manner in which the notes, interest and commissions shall be deducted from the rentals under the lease. On August 25, 1933, the holders of the fourth mortgage instituted a proceeding in the Circuit Court of Lake County, *258 Illinois, to foreclose the mortgage and for an accounting of rentals, in connection with which the court appointed a receiver to manage the property and collect the rents for the benefit of all of the parties to the foreclosure proceedings. Before foreclosure proceedings were instituted on the fourth mortgage, default occurred on the first mortgage, which default constituted a default on the second mortgage held by petitioner. Pursuant to terms of the second mortgage, petitioner, as mortgagee in possession, received from the lessee rents from the Neisner property from August 1, 1931, to August 1, 1932. The lessee refused to pay to petitionr rents thereafter due. By suit filed by him on September 22, 1933, against Neisner Bros., Inc., petitioner sought to recover from the lessee rents due from August 1, 1932, to September 1, 1933. Petitioner also sought in the litigation the right to apply, under the terms of the Supplemental Agreement, the rents collected from the lessee, and thereafter accruing, to the satisfaction of the notes, rather than to the second mortgage indebtedness, and $9,000 due from Rosenblum for payment of a like sum to the Chicago Title and Trust Co., as guarantor *259 of mortgage notes of Rosenblum in the amount of $27,000. Petitioner did not file a claim in the proceedings for the amount of his notes and check. He had decided to rely upon the Supplemental Agreement for reimbursement. The holders of the first and third mortgages also became parties to the foreclosure and receivership litigation for the purpose of asserting rights claimed by them under the respective mortgages. Lester Simon and Sylvester Meyer, doing business as Lester Simon & Co., became parties to the litigation on account of judgments they had obtained against Rosenblum and his wife in 1931 and 1933 in amounts totaling $5,175.88, exclusive of costs. Other parties to the litigation were Rosenblum and his wife and the Otis Elevator Company. The receiver intervened, and the two actions were consolidated by the court and referred to a Special Master, who, after hearings, rendered a report on November 22, 1934, which report was approved by the court on December, 6, 1940. In his report to the court the Special Master held that: 1. The holder of the first mortgage was entitled to a first lien on the Neisner property in the amount of $185,000, plus interest thereon. 2. Petitioner, *260 by virtue of his second mortgage and assignment of the lease, was entitled to a second lien on the property in the amount of $21,876.59, with interest at the rate of 7 per cent per annum from October 1, 1934. 3. Petitioner was entitled to the rents from the property and they should be applied to the second mortgage indebtedness. 4. The holder of the third mortgage was entitled to a third lien on the property for the amount of $2,818.92 and interest on $2,043.80 thereof from October 1, 1934. 5. The banks, holders of the fourth mortgage, were entitled to a fourth lien on the property for the principal in the amount of $60,934.70, and interest thereon to October 1, 1934, amounting to $13,709.56, a total of $74,104.26, together with interest on the principal amount at the rate of 7 per cent per annum from October 1, 1934, and $5,000 as solicitor's fees, to be taxed as costs. 6. Lester Simon and Sylvester Meyer were entitled to a fifth lien on the property by virtue of their judgments for the amount of $5,858.82 and interest thereon at the rate of 5 per cent per annum fromoctober 1, 1934. 7. Each lien, as enumerated above, was subject to the preceding prior liens. 8. The rights *261 of all of the parties to the proceeding except the defendant, Metropolitan Life Insurance Co., and the intervening petitioner, Otis Elevator Co., and petitioner, as owner of the second mortgage, were subject to the lease and the rights of Rosenblum and his wife and that the rights of other parties in the proceeding were subordinate to the rights of the parties and the lienors as set forth above. The Special Master also held that the sum of $16,000 was due from the lessee for rent and recommended that the lessee be directed to pay the amount for application on the balance of $21,876.59 due on the second mortgage held by petitioner, and have the right to pay the balance of $5,876.59, with interest, to petitioner for application to the balance due on the mortgage and deduct the amount from rents thereafter accruing subject to the order of the court with reference to the application of rents due under the lease on and after September 1, 1933, and that the $9,000 being claimed by petitioner under his guarantee of mortgage notes of Rosenblum was not includible in the indebtedness secured by the Supplemental Agreement. As of June 9, 1934, the following mortgages were outstanding against *262 the Neisner property: 1. First mortgage in the principal amount of $185,000, due August 6, 1944, held by the Metropolitan Life Insurance Co.
2. Second mortgage dated January 31, 1928, principal amount $50,000, held by petitioner under an assignment prior to June 9, 1934; from Neisner Bros., Inc., the original holder, when the principal amount due was $19,000. 3. Third mortgage dated October 28, 1930, principal amount $2,525, held by the Goodyear Tire and Rubber Corporation. (The mortgage was assigned to Neisner Bros., Inc., after November 22, 1934.) 4. Fourth mortgage dated February 25, 1931, principal amount $60,384.70, held by the Waukegan National Bank and the Lake County State Bank. (After November 22, 1934, the mortgage was assigned to Edwin C. Redfern, since deceased, attorney for Neisner Bros., Inc. Prior to November 22, 1934, the banks were in receivership.) On June 9, 1934, Rosenblum filed a debtor's petition in the District Court of the United States for the Northern District of Illinois, Eastern Division, under Section 74 of the Bankruptcy Act. The court adjudged him a bankrupt on February 7, 1935. On April 14, 1936, pursuant to an order of the court, all of the *263 right, title and interest of the trustee in bankruptcy and Rosenblum in the Neisner property was sold to Arthur H. Hoyle, nominee of petitioner, for $1,275 subject to all of the liens and encumbrances against it. Petitioner paid the purchase price and was the real purchaser of the property. On April 14, 1936, the trustee executed a deed in favor of Hoyle for the property, subject to all liens and encumbrances on the property. On April 27, 1936, Rosenblum was discharged in bankruptcy. As of June 9, 1934, the following judgments had been entered against Rosenblum in Lake County, Illinois. Date Entered
Amount
Judgment Creditor
February 25, 1932
$ 6,705.00
A. F. Beaubien
June 7, 1934
15,038.02
Chicago Title and Trust
Company as trustee for
John L. Patten Trust
October 25, 1932
1,238.10
John Cella
The judgment obtained by John Cella was assigned on March 22, 1939, to Frederick O. Mason. On August 15, 1939, all of the right, title and interest of Rosenblum in the Neisner property was sold under the Cella judgment by the sheriff of Lake County, Illinois, to Frederick O. Mason. The certificate of sale was thereafter assigned to Rosenblum, to whom *264 on February 20, 1941, the sheriff issued a deed for the premises. On February 24, 1940, A. F. Beaubien purchased for $1,500 at a sheriff's sale held under the judgment he had obtained against Rosenblum, and received a certificate of purchase for, all of the right, title and interest of Rosenblum and his wife in the Neisner property. Petitioner acquired the certificate from Beaubien but never recorded it. Rosenblum deposited $1,600 with the sheriff to redeem the property and on February 20, 1941, the sheriff issued a certificate of redemption to Rosenblum and his wife for the property. On April 22, 1941, petitioner and Hoyle filed a cross-bill of complaint in the foreclosure proceedings in which they alleged that Arthur H. Hoyle held the fee simple title to the Neisner property, subject to the first and second mortgages and an inchoate dower interest of Rose Rosenblum, that on April 30, 1931, Rosenblum and his wife assigned to petitioner all of their right, title and interest in and to the lease on the Neisner property, and to the lease on th Neisner property, and that there was owing to petitioner by Rosenblum and his wife the principal amount of $33,580 on ten notes and a check, *265 plus interest, secured by the Supplemental Agreement, and $9,000 under the Supplemental Agreement for a payment made to the Chicago Title and Trust Company on account of his guarantee upon certain notes of Rosenblum, and his wife, unless the court should hold that the amount should be reduced by certain collections amounting to $35,933.31. The petitioner and Hoyle claimed, in the alternative, that if the claim of the Rosenblums was upheld, the latter were liable to petitioner for $69,534.33 for principal and interest on the notes and check secured by the assignment of April 30, 1931, and the Supplemental Agreement, unless reduced by applications of rent collected by the petitioner. In his answer to the crossbill, the Rosenblums admitted the execution and delivery of the notes held by the petitioner; alleged that the loans evidenced by five of the notes, aggregating the principal amount of $29,330, were usurious on account of charges for commissions and excessive interest; alleged that the principal amount owing to petitioner on the notes was not in excess of $29,360, an amount determined by deducting usury for commissions included on the notes; denied the indebtedness of $9,000 and *266 alleged that Rosenblum held title to the equity in the Neisner property under a sheriff's deed issued to him on February 20, 1941, and admitted that petitioner was entitled to payment of the notes, after deductions were made for usury. Petitioner did not endeavor to reduce the notes to judgment in a proceeding against Rose Rosenblum and Edward Rosenblum because he regarded them as hopelessly insolvent and could find no property owned by them out of which the obligations could be collected. Between September 13, 1940, and May 1, 1942, counsel for petitioner and Rosenblum corresponded and conferred with respect to a settlement of the controversy between their respective clients. The negotiations resulted in a written offer of Rosenblum, his wife consenting, on May 11, 1942, to give petitioner in full settlement of all of his claims against the Rosenblums, and the Neisner property, a note for $80,000, due on or before December 2, 1944, with interest coupons, secured by a second mortgage on the Neisner property, and guaranteed by the Chicago Title and Trust Co. to be a valid second lien against the property; to give general releases, signed by himself, and his wife and son, of all *267 claims against him, Hoyle and Beaubien; stipulate to dismiss all of his pending litigation involving petitioner, and to obtain an agreement under the terms of which the lessee of the Neisner property would pay out of rent all payments due on the first mortgage and pay direct to petitioner certain payments on principal and interest on the new second mortgage. In consideration of the offer, petitioner was to procure and deliver to Rosenblum, (1) quit claim deeds to the Neisner property, signed by petitioner and Hoyle and Beaubien and their respective spouses, and Beaubien's cancelled certificate of sale; (2) releases of all of petitioner's lien claims against the Neisner property, including the assignment of rents, Supplemental Agreement and the various mortgage liens presently claimed by petitioner, excluding the $80,000 note to be delivered in the settlement and the second mortgage securing it; (3) the $1,600 deposited by Rosenblum in redemption of the Beaubien judgment sale; (4) stipulations to dismiss all litigation against Rosenblum without costs; (5) all of Rosenblum's notes and checks and other evidence of indebtedness and those of his wife and son; (6) general releases, signed *268 by petitioner, Hoyle and Beaubien, of all claims against Rosenblum or any member of his family, and release of claims against Neisner Bros., Inc., and the Redfern executors and their agents. The offer of Rosenblum and petitioner's undertakings thereunder was conditioned upon Rosenblum's success in settling and obtaining releases from Neisner Bros., Inc., of claims and liens against the Neisner property, excepting the lease, and against petitioner and Rosenblum, and those of the Redfern executors and heirs against the Neisner property and petitioner and Rosenblum. The offer of Rosenblum was accepted by petitioner on May 14, 1942, at which time the first mortgage was not in default and the principal amount due thereon was $135,000; the second mortgage had been paid in full but petitioner had not released the assignment thereof to him; nothing had been paid on the third and fourth mortgages, and the receiver had on hand a balance of about $80,000 out of all rents collected by him. At that time there was due on the third and fourth mortgages, including interest, about $3,900 and $106,000, respectively, and on the judgments of Lester Simon and Sylvester Meyer, including interest, about *269 $8,100. On July 24, 1942, in accordance with a proposal previously made, petitioner, Rosenblum and other interested parties entered into an escrow agreement, naming the Chicago Title and Trust Co. to receive the various documents necessary to carry out the settlement agreement. The agreement between petitioner and Rosenblum was performed in accordance with the escrow agreement. Formal releases of the assignment of April 30, 1931, to secure the second mortgage, and the Supplemental Agreement, were not required by the escrow agreement, and no such releases were executed by petitioner. The notes for which the Supplemental Agreement was security were not endorsed "paid" upon their surrender to the escrowee. Quit claim deeds were executed by petitioner, a bachelor, Hoyle and Beaubien and their respective wives, to Rosenblum in connection with the settlement. The deposit of $1,600 made by Rosenblum to redeem the Neisner property was returned to him by the sheriff at the request of petitioner. On May 11, 1942, the fair market value of the Neisner property was about $400,000. At that time petitioner had no litigation against Rosenblum other than that involved in the receivership proceedings, *270 and other than the notes and check aggregating in amount $34,580, title dispute and assignments of the lease, had no claim against Rosenblum and his wife and son Edward, or the Neisner property. The claims asserted by petitioner in the litigation and settlement negotiations to ownership of the Neisner property by virtue of the deed thereto in the name of Hoyle, his nominee, had a reasonable basis and were bona fide. The interest petitioner had in the Neisner property, evidenced by the deed, was not lost prior to 1942. Of the note in the amount of $80,000 received in the settlement, petitioner received $64.000 for the notes and check, secured by the Supplemental Agreement, of which $31,100 was a return of capital, $11,000 for reimbursement for amount paid as guarantor of a mortgage of Rosenblum, of which $2,000 constituted interest, and $5,000 for the interest he had in the Neisner property by virtue of the deed he acquired in 1936. In 1938 to 1943, petitioner paid and deducted, in his income tax returns the following amounts for legal fees and expenses: 1938
$ 2,207.86
1939
2,057.17
1940
1,561.94
1941
10,866.50
1942
6,498.00
Total
$23,191.47
In his *271 return for 1942, the petitioner reported a long-term capital gain of $44,145 realized from the receipt of a note for $80,000 from Rosenblum in the settlement, computed as follows: Cash value of note
$80,000
Cost of property exchanged
$1,275
Cost of assignment of rents: Notes
$34,330
Check
250
34,580
35,855
Capital gain
$44,145
In his determination of the deficiency, the respondent held that the transaction did not constitute a sale or exchange of capital assets and petitioner realized ordinary income of $47,625 in the transaction, computed as follows: Notes received
$80,000
Notes and check
$34,580
Eliminations
3,480 [2]
31,100
Cost of deed
1,275
32,375
Ordinary income
$47,625
He also determined that of the ordinary income of $47,625, not less than $26,933.77 represented interest and that not less than $20,691.23 *272 represented reimbursement for attorneys' fees and legal expenses paid in litigation in which petitioner and his debtors were parties defendant and deducted by petitioner in prior years. In his amended answer respondent alleged that the cost of the deed should be eliminated from the computation of income realized by petitioner from the transaction, upon the ground that the interest of petitioner became worthless prior to 1942. Opinion The major differences between the parties under the issue are the amount and nature of the taxable income realized by petitioner in the general settlement made with Rosenblum in 1942. The note received by the petitione in the settlement was regarded by each of the parties as having a value for tax purposes equal to its face amount of $80,000 and the point is not being questioned here. Petitioner reported capital gain of $44,145, using as a basis the cost of the deed he acquired in 1936 for the Neisner property and the face amount of thenotes and check he held of one or more of the Rosenblums. After an elimination of $3,480 from the basis for the notes and check, respondent, in determining the deficiency, held that $47,625 of ordinary income was realized, *273 consisting of interest on the notes of not less than $26,933.77 and reimbursement of attorneys' fees and expenses of not less than the remainder of $20,691.23. In an amended answer, asking for an increased deficiency, respondent alleged error in allowing as part of the basis, the amount of $1,275 as the cost of a deed to the Neisner property upon the ground that the title of petitioner became worthless prior to 1942. No allegations were made respecting the character of the resulting additional ordinary income of $1,275. Upon brief petitioner contends that the transaction with Rosenblum in 1942 constituted a sale or exchange of his interest in the Neisner property, represented by the Supplemental Agreement and the deed he acquired in the name of Hoyle in the Rosenblum bankruptcy proceedings. His position, in the alternative, is that if contrary to his views we should conclude that some part of the $80,000 Rosenblum agreed to pay in the settlement constituted payment on account of the notes, the amount thereof did not exceed the principal of the notes, and, consequently, resulted in no taxable income from that source. The respondent, upon brief, while adhering to his original holding *274 that only ordinary income was realized by petitioner, contends that of the $48,900 of income realized by petitioner, as asserted in his amended answer, $32,900 constituted interest on the notes, $11,000 ($2,000 interest and $9,000 principal) reimbursement for petitioner's payment of $9,000 to the Chicago Title and Trust Co. as guarantor of notes of Rosenblum, and $5,000 reimbursement for attorney's fees. A summary of some of the salient facts giving rise to the claims of petitioner against Rosenblum will be helpful. In 1931, Rosenblum and his wife assigned to petitioner, as collateral security for the payment of a note secured by a second mortgage on the Neisner property, owned in fee by Rosenblum, all of their interest as lessors of the property for a term ending in 1953. Later in the same year the assignment was modified to make it collateral security also for the payment of certain interest-bearing notes of the Rosenblums, their son being on some of them, aggregating the face amount of $34,330 and a check for $250, a total of $34,580, all of which were executed in or prior to 1931. In 1933, the holder of the fourth mortgage on the Neisner property instituted foreclosure proceedings, *275 in connection with which the court appointed a receiver to collect rents for the benefit of the parties. Later the holders of the first, second and third mortgages became parties to the litigation. In 1935, Rosenblum was adjudged a bankrupt. In 1936, pursuant to a court order, the trustee in the proceedings sold all of his and Rosenblum's interest in the Neisner property to Hoyle, nominee of petitioner, for $1,275. Later in the year Hoyle received a deed for the property, subject to liens and encumbrances, and Rosenblum was discharged. In 1939, the Neisner property was sold by a sheriff to satisfy a judgment obtained against Rosenblum in 1932 by John Cella in a county court. The certificate of sale was assigned by the purchaser to Rosenblum, who received a sheriff's deed for the property on February 20, 1941. The property was again sold in 1940, by the same sheriff, to A. F. Beaubien to satisfy a judgment he had obtained in 1932 against Rosenblum. Petitioner acquired the certificate of sale but Rosenblum redeemed the property and on February 20, 1941, received a certificate of redemption of the property. In the meantime petitioner claimed in the foreclosure proceedings a right *276 to have rents from the Neisner property applied in payment of the indebtedness on the notes and check and $9,000 paid as a guarantor, by virtue of the Supplemental Agreement. The claim was also asserted in a cross-bill filed by petitioner and Hoyle in April 1941 in the same proceedings. Negotiations were conducted by counsel for petitioner and Rosenblum for a settlement, some of which was by correspondence between September 13, 1940, and May 1, 1942. The written offer made by Rosenblum on May 11, 1942, to give a note for $80,000, secured by a second mortgage on the Neisner property, in full settlement of all matters was accepted by petitioner three days later, and was carried out according to its terms. By that time the second mortgage held by petitioner had been paid in full but had not been released. Petitioner says that the terms of the offer and acceptance, in the light of the manner in which the settlement agreement was carried out under the escrow agreement, support his primary position of a sale or exchange of the interest he had in the Neisner property under the Supplemental Agreement and title acquired on the bankruptcy sale. The settlement included such interests and *277 all other claims petitioner had against the Neisner property and the Rosenblums. It was based upon a written offer of Rosenblum to give petitioner a note for $80,000, secured by a second mortgage on the Neisner property, in full settlement and satisfaction of all of petitioner's claims against him and his wife and son on the Neisner property, with detailed provisions for the execution and delivery of various instruments regarded as necessary to consummate the agreement, and without specifying, directly or indirectly, what portion of the lump sum was being paid for each of the claims of the petitioner. We must ascertain what claims were settled, and what was paid in settlement of each, if possible, from the evidence. "The fund involved must be considered in the light of the claim from which it was realized * * *." Farmers' & Merchants' Bank v. Commissioner, 59 Fed. (2d) 913, cited with approval in Central R. Co. of New Jersey v. Commissioner, 79 Fed. (2d) 697; Swastika Oil & Gas Co. v. Commissioner, 123 Fed. (2d) 382; Durkee v. Commissioner, 162 Fed. (2d) 184. See also Raytheon Production Corp. v. Commissioner, 144 Fed. (2d) 110. *278 Since the settlement agreement here is silent on the amount to be paid for each of the several claims of petitioner, we are compelled to consider it with other evidence to resolve the controversy of the parties. See Inaja Land Company, Ltd., 9 T.C. 727. The evidence includes testimony of petitioner and counsel who represented Rosenblum in the settlement, correspondence already mentioned, and pleadings in pertinent litigation. The correspondence prior to March 1942 in regard to settlement is not sufficiently specific on the points material here to be very helpful. The contents of a letter of March 25, 1942, disclose that at that time petitioner was in general accord with a plan of settlement proposed by counsel for Rosenblum under which he would receive $75,000 for all of his claims, except to title to the Neisner property, conditioned upon an agreement on the extent of the liens he had for payment of the second mortgage and indebtedness secured by the assignment of rents. In reply Rosenblum's counsel denied such an offer but admitted that he had subsequently made one to pay $70,000 in settlement of all claims, including title. A letter of April 9, 1942, from Frederick *279 O. Mason, Rosenblum's counsel, to Charles L. Brown, petitioner's counsel, referred to an offer of petitioner to "sell out for $95,000," which offer was refused. In reply Brown suggested to Mason that the offer of $70,000 be increased pointing out, among other things, that the principal and interest on the notes was about $75,000; that petitioner had substantial grounds for contesting Rosenblum's title to the Neisner property; that he would submit to petitioner any offer Rosenblum made; that "what he [petitioner] wants is an agreement that the Rosenblums owe him the face amount of the additional indebtedness with interest" which was stated again to be in the neighborhood of $75,000. In reply, Mason pointed out that only about $62,500 was due for principal and interest on the notes without any deductions for usury; that to obtain a full settlement an offer had been made to pay $70,000 and abandon the usury claims; that no intention was made to offer $95,000; that a suggestion to agree on $75,000 as due on the indebtedness and also settle with the Neisners was "onesided"; that on an accounting he expected to reduce petitioner's claim under the notes to $50,000, and suggested that he *280 disclose the basis for his claim of $75,000 as due on the notes and "we will show our figures." In his letter of April 14, 1942, to Brown, Mason referred to a telephone conversation in which Brown said that the $75,000 petitioner claimed to be due, consisted of $64,000 on the notes and check and $11,000 on the guaranty matter; remarked that in his opinion no court would hold that the guaranty matter was covered by the Supplemental Agreement; said that Rosenblum's offer of $70,000 included the face amount of the notes, plus interest at 7 per cent, and $6,000 on the guaranty claims; referred to information given on the telephone that petitioner would accept $95,000, and informed him that Rosenblum would add no more than a few thousands to his offer of $70,000. On April 28, 1942, petitioner informed his counsel by letter that he had given the matter of settlement with Rosenblum a "great deal of consideration"; that he had "over $105,000 tied up in this transaction," and, therefore, did "not feel justified in accepting less than $85,000 in settlement of my interests in the proposition"; that Mason's suggestion of a second mortgage for the amount of the settlement and carry it until July *281 1944 was not very attractive; that after collecting the May and June rent, the receiver would have $85,686.46 in his possession; that after paying interest on principal on the first mortgage in June and paying $75,000 to settle the Neisner-Redfern liens, there would be a balance of $4,716.46 in the account of the receiver; that he would accept a second mortgage for $85,000, maturing July 1, 1944, and bearing 7 per cent interest, on the property, provided it contained certain specified terms and that his offer was conditioned upon general releases by both parties. Mason discussed the proposals made in the letter with Rosenblum and his associates, and on May 1, 1942, informed Brown by letter that providing settlement could be made with Neisner-Redfern interests for $70,000, that Rosenblum was willing to settle by giving a mortgage for $80,000 on the property, interest 6 per cent; that "they definitely will not agree to a higher mortgage"; that the offer was conditioned, among other things, upon general releases being exchanged with petitioner, Rose Rosenblum and Edward Rosenblum; the giving of quit claim deeds by petitioner Hoyle and Beaubien to the Neisner property; the return of the *282 notes and check and $1,600 deposited by Rosenblum in redemption of the Beaubien judgment sale, release of record of all of petitioner's lien claims against the property, including the assignment of rents and Supplemental Agreement, release his claim against the Neisner-Redferns, and petitioner arranging for Rosenblum to receive all moneys in the hands of the receiver in excess of $70,000. In the alternative, Rosenblum offered to pay $70,000 cash, provided the Neisner-Redfern interests would settle for a like amount. Consideration of the negotiations leading to the ultimate offer and acceptance, in the light of other evidence, leads us to the conclusion, that even though no specific written agreement was made on the point, there was a common understanding that the notes and check constituted indebtedness of Rosenblum, secured by a lien on rents from the Neisner property, to be paid in the general settlement and that the amount to be paid therefor was $64,000, including interest. We are unable to agree with the view of petitioner that some part of the $80,000 was paid for the Supplemental Agreement, to the exclusion of the notes and check it secured. That instrument was an equitable *283 mortgage given as security for payment of the notes and check and gave petitioner a right to have rents applied to the payment of the debts. First National Bank v. Illinois Steel Co., 174 Ill. 140, 51 N.E. 200; Bagley v. Illinois Trust and Savings Bank, 199 Ill. 76, 64 N.E. 1085. See Harold S. Denniston, 37 B.T.A. 834. The fact that the notes were not marked paid upon their delivery to the escrowee is not decisive. The general releases, quit claim deeds and other instruments delivered to Rosenblum were intended to bar recovery by petitioner on the debts in any action he might bring in the future for their collection. It is obvious that if the notes and interest thereon had been paid in an orderly manner by applications of rent collected under the lease, petitioner would have realized taxable income to the extent of interest and a return of capital on any amounts properly applied in reduction of principal. The manner in which the debts were paid did not produce a different result. Helvering v. Midland Mutual Life Insurance Co., 300 U.S. 216; Hort v. Commissioner, 313 U.S. 28, in which the Court held that an amount received, *284 as the result of negotiations, by a lessor from his lessee for cancellation of a lease, constituted ordinary income from rents, not a return of capital, even though the lease was property; Fairbanks v. United States, 306 U.S. 436, in which the Court held that a redemption of bonds before maturity was not a sale or exchange; Hale v. Helvering, 85 Fed. (2d) 819, in which the court held that a compromise of notes secured by a first mortgage on realty was not a sale or exchange of a capital asset. See also Lee v. Commissioner, 119 Fed. (2d) 946; Bingham v. Commissioner, 105 Fed. (2d) 971. Accordingly, we hold that instead of a sale or exchange of a capital asset, represented by the Supplemental Agreement, as contended by the petitioner, the transaction included payment of the principal of and interest on the notes and check. To what extent does the $64,000 constitute interest, taxable as ordinary income? The face amount of the debts was $34,580, which amount the respondent reduced to $31,100, on account of inclusion in the notes of (1) commissions in the amount of $2,820 for making the loans, and (2) unpaid interest in the amount of *285 $410, and the check for $250. While the petitioner concedes that for capital gain purposes the notes and check had a basis of $31,100, there is no agreement between the parties on the amount paid on principal of the notes. We think it is evident from the facts surrounding the final settlement that the petitioner and Rosenblum intended that the $64,000 included the face amount of the notes. This conclusion is supported by testimony of Mason. Of the face amount of thenotes only $31,100 constitutes a return of capital in the absence of proof that the commissions of $2,820 and unpaid interest of $410 were reported by petitioner as taxable income when included in the principal of thenotes. Neither was any proof made that the amount of the check was ever included as income in an income tax return of petitioner. Accordingly, we find that of the $64,000, $31,100 constitutes a return of capital and that of the remainder, $29,420 represents interest and $3,480 is taxable as ordinary income for the reasons already given. That petitioner received the amount of $11,000 on his claim growing out of the payment he made as guarantor of a mortgage of Rosenblum, is equally as clear. The petitioner *286 asserted a claim for the principal amount in the foreclosure and receivership proceedings, contending that it was secured by the Supplemental Agreement. The Special Master held that the payment was not secured by the Supplemental Agreement. Petitioner declined to accept such action, as evidenced by the claim he filed for the amount in April 1941 in the same proceedings. A year later, and only one month before the settlement was made, petitioner's counsel informed counsel for Rosenblum that his offer to accept $75,000 in settlement included $11,000 for his claim as a guarantor of a mortgage of Rosenblum. No evidence is present showing that petitioner ever abandoned the claim, and Rosenblum's attorney testified that the $80,000 included the amount of $9,000 as principal and $2,000 for interest in settlement of the claim. While petitioner denied that a breakdown of the offer of Rosenblum was ever submitted to him, the following testimony of Mason at least indicates the contrary: "Q. Did you ever convey to the petitioner or his counsel any breakdown of that $80,000, or were you concerned about that as long as the $80,000 was accepted? "A. They conveyed it to me. We were arguing what *287 would be the correct amount. He started at $105,000 which he thought he should have. We got down to $80,000 after weeks." Our duty is to resolve conflict in the evidence. Here we think the weight of the testimony on the point is on the side of the respondent, and, accordingly, hold that $9,000 was received by petitioner for the principal amount of his so-called guaranty claim, and $2,000 for interest thereon. The record is silent on whether petitioner ever deducted the $9,000 for income tax purposes. Without proof to the contrary, we must assume that he did, and realized taxable income when reimbursed in 1942. Accordingly, the entire amount is taxable as ordinary income. There remains for consideration the question of what the remainder, $5,000, was paid for. When determining the deficiency the respondent held that not less than $20,691.23 represented reimbursement for attorneys' fees and legal fees paid by the petitioner in prior years in the litigation. The odd amount so determined is the difference between $47,625, ordinary income held to have been realized in the settlement, and $26,933.77 held to have been received for interest. Upon brief, he contends that the $5,000 was *288 received for attorneys' fees. The petitioner's contention is that no part of the $80,000 represented reimbursement for attorneys' fees; instead, as already pointed out, that the entire amount was paid for his interest in the Neisner property. The respondent refers us to testimony of Mason to support his view. Mason testified that Rosenblum informed him that "he would pay him [petitioner] $5,000 for miscellaneous claims, attorneys' fees, and what not, that Mr. Schwartz thought he ought to have, making a total of $80,000." On cross-examination he testified that the $80,000 included "any claims Schwartz had to the title"; that he did not know exactly what it was paid for, followed by testimony that the amount was included "for expenses and attorneys' fees" and that the amount was included in the settlement because petitioner was insisting upon it. Petitioner testified that he did not consider the Rosenblums to be liable to him for attorneys' fees; that he never asserted a claim for such expenses and that he never discussed the matter with Rosenblum or his attorney. In Brown's letter of April 10, 1942, to Mason, reference was made, among other things, to litigation expenses petitioner *289 had paid in "acquiring the bankruptcy title and in defending it" and other matters involved in the suit, to persuade the 'Rosenblums to increase the amount of their offer, but no specific request was made for reimbursement of attorneys' fees. Mason seems to have construed the letter to mean that petitioner was asking for an amount for attorneys' fees, for in his letter written the next day remarked that he was sure the Rosenblums would never consent to pay petitioner's attorneys' fees and that it was hopeless to urge the point. Petitioner's letter, dated April 28, 1942, to his attorney, contains the statement that he had "over $105,000 tied up in this transaction and did not feel justified in accepting less than $85,000 in settlement of my interests in the proposition." The letter, when read in the light of a previous statement of his counsel that $75,000 was due on the debts and guaranty claim, discloses a willingness to accept an additional $10,000 for other claims. A short time later, the Rosenblums increased their offer to $80,000 for full settlement and petitioner accepted. Throughout the negotiations, petitioner held a deed to the Neisner property, which his nominee, Hoyle, *290 had acquired as a purchaser in a sale made during the course of the bankruptcy proceedings of Rosenblum, and believed that his claim of title had value. No evidence proves that he ever abandoned the claim and Brown's testimony, while in some respects conflicting, is evidence that the $5,000 included petitioner's claim to title. We conclude from all the evidence on the point that the entire amount of $5,000 was paid by the Rosenblums and accepted by petitioner in the final settlement for the latter's claim of title to the Neisner property, and, accordingly, that no part of the amount represented reimbursement for attorneys' fees on payment of other claims. What was the character of the income realized by petitioner out of the payment of $5,000? Petitioner's position is covered by his overall view that the $80,000 was received for his interests in the Neisner property, evidenced by the Supplemental Agreement and deed, and resulted in realization of capital gain. Respondent's view is that petitioner did not, as a matter of law, hold title to the property in 1942, having lost it in 1940 because of the failure of Hoyle to redeem, and without title he could not make a sale thereof, or *291 cloud thereon, giving rise to capital gain. He advances the point that a claim of title does not constitute "property" within the meaning of section 117 of the Internal Revenue Code. The argument is based upon a conclusion that petitioner's claim was "baseless." Section 117(a)(1) of the Code defines the term capital assets as meaning, for present purposes, "property held by the taxpayer." The regulations say that "The term 'capital assets' includes all classes of property not specifically excluded by section 117(a)(1)." Article 29.117-1, Regulations 111. Petitioner's claim to ownership of the property, subject to liens against it, was, as hereinbefore mentioned, based upon a deed his nominee received in 1936 in a sale by the trustee in bankruptcy proceedings of Rosenblum. Rosenblum's claim to ownership stemmed from the sheriff's deed he acquired in 1941 in the Cella proceedings and the certificate of redemption he acquired on the same day in the Beaubien litigation. Thus, both held at the material time evidence of title and neither at any time conceded that the other had good title. The inference from the evidence is that petitioner had considerable doubt *292 whether litigation with Rosenblum on the title question would result in a decision upholding his claim, but that is not decisive. It is not unusual for title to real property to have a cloud on it; that, in the final analysis, was the situation here with respect to both parties. Under the circumstances, we are unable to agree with the respondent that petitioner's claim of title was baseless. We find nothing in Crane v. Commissioner, 331 U.S. 1, helpful to the respondent. There the taxpayer sought to use as the unadjusted basis for real property, acquired by devise, for computation of gain, her equity in the property having a zero basis. The issue turned on the meaning of the term "property" as used in section 113(a)(5) of the Revenue Act of 1938. The court remarked that if the term meant "the land and building themselves, or the owner's legal rights in them, undiminished by the mortgage, the basis was $262,042.50" and referred, as relevant, to a dictionary definition of property which included "the aggregate of the owner's rights to control and dispose of that thing." Here petitioner held bona fide evidence of ownership of the property in the form of a trustee's deed *293 pursuant to the authority of the District Court sitting in bankruptcy. We construe, under all the circumstances present here, that he held sufficient interest in the Neisner property to constitute a capital asset within the meaning of section 117(a), and that the $5,000 was received therefor. Was there a sale or exchange of the interest petitioner had in the Neisner property by virtue of the deed he received from the trustee in bankruptcy? Most of the material facts on the point have been discussed in connection with other questions involved in the general issue and no useful purpose would be served by restating them. We think that all of the evidence establishes a sale of the property petitioner acquired by the deed, and so hold. See Walter H. Sutliff, 46 B.T.A. 446; Alice G. K. Kleberg et al., 43 B.T.A. 277; 2 T.C. 1024. There remains the question of whether petitioner lost his basis of $1,275 prior to 1942 on account of worthlessness, an issue raised by the respondent in his amended answer. The petitioner's claim to title had a reasonable basis and was bona fide. He continued to assert it until the settlement made with the Rosenblums in *294 1942. Under the circumstances, it can not be said that he sustained a loss with respect thereto prior to that year. Morton v. Commissioner, 104 Fed. (2d) 534; Edward and John Burke, Ltd., N. Y., 3 T.C. 1031; Maurice P. O'Meara, supra [8 T.C. 622,]. Accordingly, we find that capital gain of $3,725 was realized by petitioner from a sale of his interest in the Neisner property, evidenced by the deed he held. Decision will be entered under Rule 50. Footnotes
1. Son of Moses H. Rosenblum.↩
2. Of this amount, $2,820 was determined by the respondent to represent commissions charged by petitioner for making loans to Rosenblum, and that $410 represented unpaid interest on loans made by petitioner. The remainder of the amount eliminated was for the check in the amount of $250.↩